## UNITED STATES v. ZILVER.
### No. 5483.

District Court, E. D. New York.
Jan. 26, 1932.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Martin Neumann, Asst. U. S. Atty., and Charles P. Muller, Asst. Director of Naturalization, both of New York City, of counsel), for the United States.

Milbank, Tweed, Hope & Webb, of New York City (William D. Embree and Arthur John Keeffe, both of New York City, of counsel), for defendant.

GALSTON, District Judge.

This is a suit in equity in which a certificate of citizenship issued to the defendant is sought to be set aside on the ground that the defendant illegally procured an order in the Supreme Court of the state of New York, Richmond county, admitting him to citizenship. It is alleged that the defendant falsely represented that he had resided continuously in the United States for a term of five years immediately preceding the date of his petition.

It appears that the defendant is a native and former subject of the Netherlands. On March 23, 1928, he made declaration of intention to become a citizen, and on September 5, 1930, he filed a petition for citizenship in the Supreme Court of Richmond county, N. Y. In the petition, he set forth that he had "resided continuously in the United States of America for the term of five years, at least, immediately preceding the date of this peti-

tion, to wit: since August 4, 1923, and in the County of Richmond, State of New York, continuously next preceding the date of said petition since August 18, 1929"; being a resident within said county of at least six months next preceding the date of this petition.

Two supporting affidavits, one by Howard F. Montgomery, and the second by John Borgner, state that they knew the defendant since August 1, 1925, and to their knowledge he resided in the United States continuously, preceding the date of the filing of the petition, since August 1, 1925. When the petition came up for consideration before the Supreme Court of the state of New York, it was opposed on the ground that the defendant had been absent from the United States from August 11, 1928, until August 12, 1929, inclusive.

The action is brought pursuant to section 15 of the 1906 Naturalization Act as amended, now section 405 of title 8, U. S. C. (8 USCA § 405). In part that section provides: "It shall be the duty of the United States district attorneys for the respective districts, or the Commissioner or Deputy Commissioner of Naturalization, upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured."

As presented, the government seems convinced that the allegation of fraud cannot be supported, for there is set forth in the government's brief this passage: "It is still an open question whether the two witnesses were personally acquainted with the respondent during the whole period of the five years prior to the filing of the petition, but as far as this proceeding is concerned, the United States Attorney is convinced that the allegation of fraud, usually alleged in proceedings of this nature, cannot be maintained, and therefore consents to withdraw from the complaint the word 'fraudulently,' insisting, however, that the naturalization certificate was obtained illegally and unlawfully."

Thus the government's position may be stated to rest squarely on the proposition that the certificate was unlawfully procured, not because of any willfully false statement in the petition and supporting affidavits, but because as a matter of fact the defendant was absent from the United States for more than one year. Section 382 of title 8, U. S. C., as amended by the Act of March 2, 1929 (8 USCA § 382), provides in part: "Absence from the United States for a continuous period of one year or more during the period immediately preceding the date of filing the petition for citizenship for which continuous residence is required as a condition precedent to admission to citizenship shall break the continuity of such residence. (As amended Mar. 2, 1929, c. 536, § 6 (b), 45 Stat. 1513.)"

This provision is mandatory and is applicable to the petition in this case, for this petition was filed subsequent to July 1, 1929, the effective date of the amendment. If, therefore, the defendant had been absent from the United States for a continuous period of one year, then he was not entitled to a certificate of citizenship. See In re Roerich (D. C.) 44 F.(2d) 241; In re Vitale (D. C.) 44 F.(2d) 241; and such has been the interpretation of the statute generally in unreported proceedings both in this district and in the Southern district of New York.

But the defendant offers proof that the ship on which he returned to the United States came within the three-mile territorial limit before the expiration of the statutory period.

On August 11, 1928, while in the employ of the National City Company of New York City, Jan Zilver with his wife sailed from New York on the steamship Paris for Batavia, Java, on business for his employer. After remaining in Batavia for about eight months, he proceeded to return to America, embarking on the steamship President McKinley at Hongkong on July 23, 1929, and arrived at Seattle at 3:42 p. m. on August 12, 1929.

The sole question of fact to be determined is whether the President McKinley was actually within three nautical miles of the shores of the United States prior to midnight of August 11, 1929; for, if so, then the defendant had returned to the United States before the expiration of the statutory period.

From the testimony of Morris Seavey, second officer of the steamship McKinley, and the log of the vessel, it appears that she traveled at full speed from 11:26 p. m. on August 11, 1929, to 4 a. m. on August 12, 1929; that at such speed the vessel would have traveled 14.5 nautical miles per hour; that at 1:14 a. m. on August 12, 1929, the Slip Point Light was bearing 149 degrees true, 4 points on her bow; that the maximum distance that the vessel traveled from midnight on August 11,

1929, to 1:14 a. m. on August 12th was 17.9 nautical miles, from which figures and from the official charts and communications from the Department of State, it would appear that the vessel was one-quarter of a mile outside of the three-mile limit at midnight on August 11, 1929. Such calculation made no allowance for the effect of the tide. Accordingly, the tide tables and current tables for the Pacific Coast for the year 1929, a departmental publication, was offered in evidence, from which it appears that at 12:29 a. m. on August 12, 1929, at Cape Flattery Light, Tatoosh Island, the tide was low. It continued to ebb, reaching a maximum ebb of 1.4 miles per hour at 1 a. m. of August 12, 1929. Apparently the vessel was running against the current from midnight of August 11, 1929, to 1:14 a. m. of August 12, 1929, and the distance traveled by the vessel during that hour and fourteen minutes was reduced to the extent of 1.72 miles. Making a deduction of this distance from the distance traveled, unhampered by the ebb tide, it appears that from midnight of August 11, 1929, to 1:14 a. m. August 12, 1929, the vessel would have traveled approximately 16.2 miles; so that instead of being one-quarter of a mile outside the three-mile limit at midnight of August 11, 1929, it was actually 1.45 miles within the three-mile limit at that time. Thus it may reasonably be inferred that the President McKinley with the defendant on board crossed the three-mile limit some minutes before midnight of August 11, 1929.

If that finding is correct, then the defendant was not absent from the United States as a matter of law for one year, for there can be no reasonable argument that the maritime belt should not be considered part of the country contiguous thereto. Manchester v. Massachusetts, 139 U. S. 240, 11 S. Ct. 559, 35 L. Ed. 159; Cunard Steamship Co. v. Mellon, 262 U. S. 100, 43 S. Ct. 504, 67 L. Ed. 894, 27 A. L. R. 1306.

The fact that the immigration authorities had the right to examine Jan Zilver after he reached port is urged by the government as a reason for concluding that he was still absent from the United States. I can see no force or weight in that argument.

The bill may be dismissed. Submit decree.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.